# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES NEWTON,

        Plaintiff,

vs.                                           No. CIV 12-0163 JB-LAM

DEPARTMENT OF VETERANS
AFFAIRS, and ERIC K. SHINSEKI,
Secretary of Veterans Affairs,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss Count 1 and Memorandum in Support Thereof, filed February 1, 2013 (Doc. 17)("MTD"); and (ii) the Motion for Leave to Amend Count 1 of the Complaint for Damages, filed April 1, 2013 (Doc. 23)("Motion for Leave to Amend"). The Court held a hearing on September 20, 2013. The primary issues are: (i) whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, preempts other causes of action for a federal employee's racial discrimination lawsuit against his employer, jurisdictionally barring the employee's attempts to bring the claims under 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment to the Constitution of the United States of America; and (ii) whether the Court should permit Plaintiff James Newton to amend the Complaint for Damages, filed February 21, 2012 (Doc. 1)("Complaint"). The Court will grant the MTD and will deny, without prejudice, the Motion for Leave to Amend. Title VII is the

---

[1] On September 23, 2013, the Court issued an Order in which it granted the requests in Defendant's Motion to Dismiss Count 1 and Memorandum in Support Thereof, filed February 1, 2013 (Doc. 17), stating: "The Court will . . . at a later date issue a memorandum  opinion more fully detailing its rationale for this decision." Doc. 27 at 1 n.1  This Memorandum Opinion and Order is the promised opinion, and also addresses the Motion for Leave to Amend Count 1 of the Complaint for Damages, filed April 1, 2013 (Doc. 23).

exclusive remedy for federal employees to bring racial discrimination cases against their federal employer, and it requires that employees exhaust their administrative remedies before they may file suit in federal court.  Because bringing a non-Title VII racial discrimination claim against a federal employer attempts to circumvent the Title VII requirements, and because exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a racial discrimination case, the Court will grant the MTD under rule 12(b)(1) of the Federal Rules of Civil Procedure. Newton expressed at the hearing that he wanted to revise the Complaint and agreed with the Court to withdraw his Motion for Leave to Amend.  Although he has not yet withdrawn his Motion for Leave to Amend or re-filed a motion with an amended complaint addressing the concerns that the Defendants expressed at the hearing, the Court will deny the Motion for Leave to Amend without prejudice and permit Newton to re-file a motion for leave to amend with the version of the amended complaint he wishes to pursue.

## FACTUAL BACKGROUND

Newton is an African-American male who was born in February, 1952.  See Complaint ¶ 1, at 1; id. ¶ 6, at 2.  He was "a Supply Technician, GS-6, assigned to the Department of Veterans Affairs" in Albuquerque, New Mexico.  Complaint ¶ 6, at 2.  Brian Treaty, "the Chief of Logistic Service, GS-12, Step 4," was Newton's first-line supervisor.  Complaint ¶ 7, at 2. Vicki Ogilvie, an Inventory Management Specialist, GS-9, was Newton's co-worker, and reviewed database entries that Newton and another co-worker, Patrick O'Grady, entered.  See Complaint ¶ 8, at 2.  "Ogilvie self identifies as 'white', age unknown."  Complaint ¶ 8, at 2. O'Grady, "grade unknown," worked at the same time as Newton, performed the same work, and reported to the same supervisor.  Complaint ¶ 9, at 2.  "O'Grady was born in December 1964 and

is Caucasian."   Complaint ¶ 9, at 3.   In 2009 and 2010, "O'Grady received more training, assistance, and instruction" than Newton.  Complaint ¶ 13, at 3.

In March, April, and August, 2009, Newton "was subjected to a hostile work environment due to his race or age arising from Ogilvie's yelling touching, and grabbing of him."  Complaint ¶ 14, at 3.  "After [Newton] filed a police report against Ogilvie for grabbing his arm, Supervisor Streaty asked [Newton] if there was a way to keep it 'in house' and did nothing to curtain Ogilvie's behavior."  Complaint ¶ 14, at 3.  Ogilvie's behavior and Streaty's failure to address the situation "created an environment pervasive enough such that [Newton] was unable to work in a safe environment, free from physical harm."  Complaint ¶ 14, at 3.

Newton spoke with an Equal Employment Opportunity ("EEO") counselor on October 19, 2009.  See Complaint ¶ 10, at 3.  In November, 2009, Streaty asked Newton about the EEO complaint and the hostile work environment, and took notes.  See Complaint ¶ 11, at 3.  Streaty told Newton that Newton's work location would be changed in April, 2010; Newton's work location changed on April 30, 2010.  See Complaint ¶ 12, at 3.

## PROCEDURAL BACKGROUND

In the Complaint that Newton filed in February, 2012, Newton alleges two counts against the Department of Veterans Affairs.  In Count I, Newton states that he is "an African-American man and is, therefore, a member of a protected class," and alleges that Streaty and Ogilvie discriminated against him because of his race; that he was denied training, assistance, and instruction because of his race; and that such discrimination "violated 42 U.S.C. Section 1981 and violated his rights to Equal Protection under the Laws under the 14th Amendment of the Constitution and 42 U.S.C. 1983."  Complaint ¶¶ 16-20, at 4.  In Count II, Newton states that, "at

all material times," he was "age forty or over and is, therefore, a member of a protected class," and alleges that Streaty and Ogilvie discriminated against him because of his age, that he was denied training, assistance, and instruction because of his age, and that "[s]uch conduct deprived Plaintiff of freedom from age discrimination under the laws of the United States and the United States Constitution."  Complaint ¶¶ 22-25, at 4-5.  He also cites "29 U.S.C. § 2000e et seq." in Count II.  Complaint at 4.

The Defendants move the Court to dismiss Count I of the Complaint pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure.  See MTD at 1.  The Defendants argue that Newton's claims "fail to establish subject matter jurisdiction in this Court"; the Defendants contend that, because Newton is a federal employee, his "exclusive remedy to sue his federal employer" is Title VII.  MTD at 2.  According to the Defendants, "[t]he requirements of Title VII include exhaustion of administrative remedies and adequate pleading of timely compliance with the exhaustion of remedies, among other requirements, to establish the jurisdiction of this Court.  Newton has neither alleged nor complied with the requirements set forth in Title VII." MTD at 2.  The Defendants assert that the Court does not have subject-matter jurisdiction over Count I as Newton pled it, because "'a federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII,'" and because the Fourteenth Amendment "applies only to the states, not the federal government."  MTD at 3 (quoting Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997)).

When Newton did not respond by February 15, 2013 -- fourteen days after the Defendants filed the MTD -- the Defendants filed the Notice of Completion of Briefing of Motion to Dismiss Count 1 of Plaintiff Newton's Complaint, filed March 11, 2013 (Doc. 20).

Newton responded to the MTD on April 1, 2013.  <u>See</u> Response to Defendant's Motion to Dismiss Count 1, filed April 1, 2013 (Doc. 22)("Response").  In the opening paragraph, he states that he is responding to the MTD, and that he "respectfully requests permission for leave to amend the Complaint For Damages."  Response at 1.  As grounds for his responses, he explains that he agrees with the Defendants that Title VII is his exclusive remedy to sue his federal employer, that he wishes to amend the Complaint to invoke the Court's jurisdiction pursuant to Title VII, and that the Defendants "will not be prejudiced in any fashion if Plaintiff were granted leave to amend Count 1 of the Complaint immediately upon leave to do so." Response ¶¶ 1-3, at 1.

Newton asserts that, "[o]n November 16, 2011, the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication sent a Transmittal Of Final Agency Decision Or Order to the Plaintiff," which notified him "of his right to file a civil action in the United States District Court within 90 days of receipt of the final action if no appeal to EEOC was filed."  Response ¶¶ 4-5, at 1-2.  He explains that "[n]o appeal to EEOC was filed," that he timely filed the Complaint, and that he "has therefore exhausted his administrative remedies."  Response ¶¶ 5-6, at 2.  In his view, the Complaint "properly sets forth allegations necessary to establish the subject matter jurisdiction of the Court," except for his failure to cite the correct statutory provisions.  Response ¶ 7, at 2.

On the same day that Newton filed the Response, he filed the Motion for Leave to Amend.  The Motion for Leave to Amend is nearly identical to the Response; the only difference is that the introductory paragraph seeks only "permission for leave to amend the Complaint For Damages" and does not mention that it is a response to the MTD.  Motion for Leave to Amend at

1.   In the Amended Response to Defendant's Motion to Dismiss Count 1, filed April 10, 2013 (Doc. 24)("Amended Response"), Newton repeats the same substance as the Response and the Motion for Leave to Amend, but also attaches the Amended Complaint for Damages.   See Amended Response at 1-2.   The Amended Complaint for Damages, filed April 10, 2013 (Doc. 24 at 3)("Amended Complaint"), includes three, rather than two, counts against the Defendants: (i) Count I is the race discrimination claim, amended to invoke "Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act"; (ii) Count II alleges age discrimination under "29 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act," and he adds "the New Mexico Human Rights Act," and (iii) Count III alleges retaliation and reprisal under "Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act," because Newton's "work location was changed" and he "was further denied training provided to other employees similarly situated due to the filing of his EEOC Complaint."[2] Amended Complaint ¶¶ 15-28, at 4-5.

---

[2] Newton refers to both an EEO Complaint, see Complaint ¶ 10, at 3 ("Streaty discussed Plaintiff's EEO complaint with Plaintiff"), and an EEOC Complaint.   The Defendants also referred to an EEOC Complaint at the hearing.   See Transcript of Hearing at 3:17-21 (taken September 20, 2013)("Tr")(Burnett)(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.).

The Court thinks that the parties' references should be to the EEO Complaint, because the Court is not aware that Newton filed a complaint with the EEOC.   The Court thinks that, after Newton spoke with the EEO counselor, he filed a formal complaint with the Office of Employment Discrimination Complaint Adjudication ("OEDCA"), the Department of Veterans Affairs' adjudicatory authority established to review the merits of employment discrimination claims, see Office of Employment Discrimination Complaint Adjudication Home Page, United States Department of Veterans Affairs, http://www.oedca.va.gov (last visited March 25, 2014), and that he did not file a complaint with the EEOC, see Overview Of Federal Sector EEO Complaint   Process,   U.S.   Equal   Employment   Opportunity   Commission, http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm (last visited March 25, 2014) (explaining that, if the federal employee or job applicant does not settle the dispute with the EEO counselor, then he or she can file a formal discrimination complaint against the agency

At the hearing on September 20, 2013, the Court noted, and Newton agreed, that Newton does not oppose the MTD, and that the "real issue" is whether he would be allowed to amend his Complaint.  Transcript of Hearing at 2:11-16 (taken September 20, 2013)("Tr.")(Court, Jones).[3] The Court stated that the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), limits the Court's jurisdiction, and so motions to dismiss for lack of subject-matter jurisdiction pursuant to rule 12(b)(1) are proper under the FTCA, but asked the Defendants whether this situation -- where Newton brought the wrong claim -- also presents a jurisdictional issue.  See Tr. at 2:17-23 (Court).  The Defendants said that it is a jurisdictional issue; they argued that Newton could bring the claim only under Title VII, and, because he filed under 42 U.S.C. §§ 1981 and 1983, the Court did not have jurisdiction to hear the claims.  See Tr. at 2:23-3:4 (Burnett).  The Defendants asserted that the citation for the statute which Newton referenced for his age discrimination claim -- 29 U.S.C. §2000e -- is not the proper citation.  See Tr. at 3:10-14 (Burnett).  According to the Defendants, the alleged events occurred in 2009, after which the EEOC complaint and proceedings occurred, and Newton was given ninety days to either appeal or appear in district court.  See Tr. at 3:17-21 (Burnett).  The Defendants argue that, while Newton timely filed his original Complaint, service was not timely, and allowing Newton to amend would improperly allow Newton to extend his deadline to file and serve the Defendants.  See Tr. at 3:21-25 (Burnett).  The Defendants said that they did not raise these issues in the MTD, because the problem had not yet occurred, and further explained that the Amended Complaint includes a third claim that was not in the Complaint.  See Tr. at 4:1-7 (Burnett).  The

with the agency's EEO office; only after the agency issues a final decision can the employee or applicant appeal the decision to the EEOC or challenge it in federal district court).

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Defendants explained that they would likely move to dismiss the remaining claim in the Complaint -- Count II regarding age discrimination -- but that, because they had not yet filed that motion, the issue was not properly before the Court.  <u>See</u> Tr. at 4:10-5:1 (Burnett).

The Court clarified that the Defendants were asking the Court to grant the MTD, dismiss Count I under rule 12(b)(1), and "then just stop," and asked the Defendants to respond to the Motion for Leave to Amend.  Tr. at 5:2-7 (Court).  The Defendants argued that it would not be appropriate to allow Newton to amend his Complaint, because "[i]t's a year and a half out of time."  Tr. at 5:14-16 (Burnett).  They asserted that they would likely file another motion to dismiss after the Court rules on the current MTD, and that they do not believe additional discovery is necessary, although they recognized that Newton may disagree.  <u>See</u> 5:19-6:2 (Burnett).  The Court asked why the Defendants did not file a reply for the MTD or a response to the Motion for Leave to Amend.  <u>See</u> Tr. at 6:3-8 (Court).  The Defendants explained that, although it would have been better to file a reply and response, Newton's Response, Motion for Leave to Amend, and Amended Response appeared to them as "start[ing] the whole process over" and would require a new answer, and that a reply or response to the existing motions would not assist the Court.  Tr. at 6:8-25 (Burnett).

Turning to Newton, the Court asked whether he agreed that the MTD raises a jurisdictional issue under rule 12(b)(1), and that the Court should grant the MTD and dismiss Count I; Newton agreed.  <u>See</u> Tr. at 7:1-8 (Court, Jones).  The Court said that it would grant the MTD.  <u>See</u> Tr. at 7:9-10 (Court).  On the Motion for Leave to Amend, the Court asked Newton, after having heard the Defendants' problems with the Amended Complaint, whether he wanted to "pursue this Complaint or . . . revise it and tr[y] to meet" the Defendants' concerns.  Tr. at

7:11-15 (Court).  Newton said that he wanted to revise the Complaint.  See Tr. at 7:16 (Jones).
The Court asked if it would be appropriate for Newton to withdraw the Motion for Leave to
Amend and then file a new motion for leave to amend, to avoid the potential confusion with
whether the Defendants are responding to the current Complaint or an amended complaint.  See
Tr. at 7:17-24 (Court).  Newton agreed that the Court's proposed course of action would be
acceptable, and the Court explained that Newton would not have to file a motion, but that he
should file a notice withdrawing the Motion for Leave to Amend.  See Tr. at 7:25-8:6 (Newton,
Court).  The Court encouraged Newton to speak with the Defendants to figure out the problems
that the Defendants identified with the Amended Complaint, so that he could avoid those
problems when he re-files a motion for leave to amend.  See Tr. at 8:11-20 (Court).

On September 23, 2013, the Court filed an Order granting the MTD.  See Order, filed
September 23, 2013 (Doc. 27).

### LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those
cases authorized and defined in the Constitution which have been entrusted to them under a
jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th
Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's
jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,
104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its
existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction
over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The Tenth Circuit has held that
motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a

facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or

(2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v.

McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133 JB/KBM, 2011 WL 6013025, at *8

(D.N.M. Sept. 30, 2011)(Browning, J.). As the United States Court of Appeals for the Fifth

Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the

complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on

affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v.

Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th

Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not

necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING RULE (12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as

true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))(internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the

line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute. See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights."). Rather, 42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Aikins, 487 U.S. 42, 48 (1988). Broken down differently, a plaintiff

must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

- 13 -

Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)). Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal judiciary to displace state law through the creation of a body of general federal tort law. See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)(civil-rights statute).

The Supreme Court of the United States has made clear that there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens [v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658, 689 (1978). It can be held liable only for its own unconstitutional or illegal policies, and not for the tortious acts of their employees. See Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. at 689.

Liability requires a showing that such policies were a "deliberate or conscious choice." Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)(citations omitted)(internal quotation marks omitted). See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)). These standards apply for

allegations of liability based on failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons.  Barney v. Pulsipher, 143 F.3d at 1367, 1309 n.8.  "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable.  Barney v. Pulsipher, 143 F.3d at 1307.

> In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Barney v. Pulsipher, 143 F.3d at 1307-08 (quoting Bd. of Cnty Comm'rs v. Brown, 520 U.S. at 409).  Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations."  Barney v. Pulsipher, 143 F.3d at 1308.

### LAW REGARDING MOTIONS TO DISMISS IN THE TITLE VII CONTEXT

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).  The Court has noted that Title VII generally protects individuals from employers' improperly motivated adverse treatment in the workplace: "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-

2(a)(1))(alterations omitted)(internal quotation marks omitted).  With the 1972 amendments to the statute, Title VII's protections apply to federal and private employees.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)).

For federal employees who wish to sue their employer for job-related discrimination, Title VII provides the exclusive remedy.  See Brown v. Gen. Servs. Admin., 425 U.S. at 835 (holding that § 717 of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e-16, "provides the exclusive judicial remedy for claims of discrimination in federal employment").  42 U.S.C. § 2000e-16 provides specific procedures an employee must follow; failure to exhaust administrative remedies according to that statute leads to a jurisdictional bar precluding a suit in federal court under rule 12(b)(1), while untimely filing a suit in federal court after final agency action can result in dismissal for failure to state a claim under rule 12(b)(6). See Mobley v. Donahoe, 498 F. App'x 793, 797 (10th Cir. 2012)(unpublished)[4]("Ordinarily, the failure to exhaust a Title VII claim can be raised in a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. . . .  [T]he failure to timely file a Title VII suit [is] subject to dismissal under Rule 12(b)(6) for failure to state a claim . . . .").

---

[4] Mobley v. Donahoe is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Mobley v. Donahoe has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

In Brown v. General Services Administration, the plaintiff, Clarence Brown, filed an administrative complaint with the General Services Administration Equal Employment Opportunity Office, alleging that he did not receive a promotion because of racial discrimination. See 425 U.S. at 822.   Based on an investigative report, the GSA Regional Administrator determined that "there was no evidence that race had played a part in the promotion," and after a hearing, the examiner agreed that there was no evidence of racial discrimination, and found that Brown failed to receive the promotion "because he had not been 'Fully cooperative.'"  425 U.S. at 822 (source of internal quotation unidentified).   The agency informed Brown that he could appeal the decision with the Board of Appeals and Review of the Civil Service Commission, or, alternatively, file suit in federal district court within thirty days.  See 425 U.S. at 822-23.  Brown filed suit in federal district court forty-two days later, alleging jurisdiction

> under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U.S.C. § 2000e Et seq. (1970 ed. and Supp. IV), "with particular reference to" § 717; under 28 U.S.C. § 1331 (general federal-question jurisdiction); under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; and under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

425 U.S. at 823-24 (footnote omitted).  Because Brown did not file the complaint within thirty days of final agency action, as 42 U.S.C. § 2000e-16(c) required, the defendants moved to dismiss the complaint for lack of subject-matter jurisdiction, and the district court granted the motion.  See 425 U.S. at 824.  The United States Court of Appeals for the Second Circuit affirmed the district court's dismissal.  See 425 U.S. at 824.  The Supreme Court addressed whether § 717 of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-16, was the "exclusive individual remedy available to a federal employee complaining of job-related racial discrimination."   425 U.S. at 824-25.   That provision "proscribes federal employment

discrimination and establishes an administrative and judicial enforcement system." 425 U.S. at

829. The Supreme Court explained that the "balance, completeness, and structural integrity of

§ 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by

§ 717(c) was designed to supplement other putative judicial relief," 425 U.S. at 832, and that

"the established principle leads unerringly to the conclusion that § 717 of the Civil Rights Act of

1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal

employment," 425 U.S. at 835. The Supreme Court held that, because the plaintiff failed to

timely file a complaint under § 717, "the District Court properly dismissed the case." 425 U.S.

at 835.

After Brown v. General Services Administration, the Supreme Court explained that

"filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit

in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel,

and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). In

Belhomme v. Widnall, 127 F.3d 1214 (10th Cir. 1997), the Tenth Circuit applied this rule,

holding that the filing deadline in 42 U.S.C. § 2000e-16(c) -- within ninety days of receipt of

notice of final agency action -- does not create a jurisdictional issue: "We believe . . . that current

case law treats the filing deadline not like a non-waivable question of subject-matter jurisdiction,

but rather as a waivable statute of limitation that is subject to equitable tolling." 127 F.3d at

1216 n.1.

On the other hand, failure to exhaust the administrative remedies outlined in 42 U.S.C.

§ 2000e-16, or attempting to bring discrimination claims against a federal employer apart from

Title VII, can create subject-matter jurisdiction issues for plaintiffs. When the plaintiff in

Mobley v. Donahoe sued his federal employer, asserting federal constitutional and statutory claims, as well as common-law claims, the employer moved to dismiss the complaint under rules 12(b)(1) and 12(b)(6).  See 498 F. App'x at 795.  The district court determined that Title VII preempted the other claims that the plaintiff had asserted under other federal statutes, directly under the Constitution, or based on common law; on appeal, the plaintiff raised the issue whether Title VII preempted his related non-Title VII claims.  See 498 F. App'x at 796.  The Tenth Circuit reviewed the dismissal under rule 12(b)(1) de novo, noting that rule 12(b)(1) motions can take the form of a facial attack or a factual attack, and determining that "[t]he preemptive effect of Title VII over [the plaintiff's] claims presents a facial attack, as it presents a challenge to the complaint's sufficiency, rather than the facts upon which subject matter jurisdiction depends." 498 F. App'x at 796 (internal quotation marks omitted).  The Tenth Circuit stated that "Title VII is the exclusive remedy," and held that "all of [the plaintiff's] constitutional and common-law discrimination claims are preempted, and the district court properly dismissed them."  498 F. App'x at 796-97.  Because the district court had converted the defendant's motion to dismiss to a motion for summary judgment, the Tenth Circuit reviewed the conversion issue and, in the process, compared motions to dismiss under 12(b)(1) and 12(b)(6) in the Title VII context:

> Ordinarily, the failure to exhaust a Title VII claim can be raised in a Rule 12(b)(1) motion to dismiss for lack of jurisdiction.  See Bertsch v. Overstock.com, 684 F.3d 1023, 1030 (10th Cir. 2012)(observing that Title VII exhaustion is jurisdictional).  But a court is required to convert such a motion into one seeking summary judgment "when resolution of the jurisdictional question is intertwined with the merits of the case." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  Similarly, the failure to timely file a Title VII suit, while subject to dismissal under Rule 12(b)(6) for failure to state a claim, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 . . . (1982)(Title VII timeliness is non-jurisdictional), must be treated as seeking summary judgment when "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).

498 F. App'x at 797.

## LAW REGARDING AMENDMENT OF PLEADINGS

Rule 15(a)(1) provides that a "party may amend its pleading once as a matter of course" in two situations: either "within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Rule 15(a)(2) provides: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, No. 04-1396 JB/WDS, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., No. 05-0073, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.). The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999). See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66. "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schs., No. 05-1165 JB/RLP, 2007 WL 1306814, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend."  D.N.M.LR-Civ. 15.1.

## ANALYSIS

The Court will grant the MTD, because federal employees may sue their employers only under Title VII, and not under §§ 1981 and 1983, or directly under the Constitution.  The parties agreed that the Court should grant the MTD under rule 12(b)(1); the Court agrees that Newton may sue his federal employer exclusively under Title VII, and not under other civil rights statutes or directly under the Constitution, and that this defect creates a jurisdictional bar.  See Mobley v. Donahoe, 498 F. App'x at 796 (granting a motion to dismiss under rule 12(b)(1) for lack of subject-matter jurisdiction when the plaintiff brought non-Title VII discrimination claims against his federal employer).  Invoking the incorrect statutes is as though the plaintiff has not followed the procedure required under 42 U.S.C. § 2000e-16, and a plaintiff's failure to exhaust his or her administrative remedies presents a jurisdictional bar to suit.  See Bertsch v. Overstock.com, 684 F.3d 1023, 1030 (10th Cir. 2012)(observing that Title VII exhaustion is jurisdictional).  Because Newton did not invoke Title VII in Count I against his federal employer, the Court will dismiss Count I under rule 12(b)(1) for lack of subject-matter jurisdiction.

Further, the Court discussed at the hearing, and Newton agreed, that Newton would withdraw the Motion for Leave to Amend and file a new motion with an amended complaint that addresses the concerns that the Defendants raised at the hearing.  Newton has not withdrawn the Motion for Leave to Amend or filed a new motion with an amended complaint.  Newton expressed at the hearing that he wanted to address some of the Defendants' concerns and pursue

a revised complaint that he had not yet filed, and, while the Court is willing to grant him leave to amend the Complaint, it is not clear to the Court that Newton still wishes to pursue the Amended Complaint he attached to the Motion for Leave to Amend.  The Court thinks the better course of action is to allow Newton to address the concerns by filing a new motion for leave to amend with the version of the amended complaint that Newton wishes to pursue.  The Court will, thus, deny the Motion for Leave to Amend without prejudice to Newton filing a new motion with the amended complaint that he wishes to litigate attached to the motion.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss Count 1 and Memorandum in Support Thereof, filed February 1, 2013 (Doc. 17), is granted; and (ii) the Motion for Leave to Amend Count 1 of the Complaint for Damages, filed April 1, 2013 (Doc. 23), is denied without prejudice to Plaintiff James Newton filing a new motion with an amended complaint attached that he wants to litigate.  If Newton does not file a new motion to amend with an amended complaint attached within ten days of the entry of the Memorandum Opinion and Order, the Court will dismiss the claim without prejudice.

 

 

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Frederick D. Jones, Jr.
Albuquerque, New Mexico

      *Attorney for the Plaintiff*

Kenneth J. Gonzales
  United States Attorney
Michael H. Hoses
Paula G. Burnett
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendants*